**O**

# United States District Court
# Central District of California

THE CALIFORNIA ENDOWMENT,

           Plaintiff,

    v.

RADNOR SPECIALTY INSURANCE COMPANY,

           Defendant.

Case № 2:25-cv-06891-ODW (MARx)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [18]**

## I.    INTRODUCTION

Plaintiff The California Endowment brings this action for breach of insurance contract to recover costs it incurred after Defendant Radnor Specialty Insurance Company accepted and was funding The Endowment's legal defense. (Compl. ¶¶ 23–24, 27, 31, 33, 53–58, Dkt. No. 1.)  Radnor moves for summary judgment on the grounds that the relevant insurance policy contains an applicable explicit no-voluntary-payments ("NVP") provision, which affirmatively excludes from coverage the defense costs that The Endowment unilaterally incurred without Radnor's knowledge or consent.  (Mot. Summ. J. ("Motion" or "Mot.") 1–3, Dkt. No. 18.)  For the reasons that follow, the Court **GRANTS** Radnor's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   BACKGROUND[2]

Radnor issued an employment practices liability insurance policy to The Endowment (the "Policy").  (Radnor UF ISO Mot. ("UF") 4, Dkt. No. 18-1; Decl. James B. Shrimp ISO Mot. ("Shrimp Decl.") Ex. 1 ("Policy"), Dkt. No. 18-2.)  While the Policy was in effect, a nonparty filed a lawsuit against The Endowment alleging employment practices claims (the "Durham Action").  (UF 1–3.)  On May 11, 2022, The Endowment tendered its defense to Radnor pursuant to the Policy.  (Endowment AMF ("AMF") 34, Dkt. No. 26-1.)  On May 25, 2022, Radnor promptly accepted coverage under a reservation of rights and retained the Wesierski & Zurek ("W&Z") law firm to provide The Endowment's defense.  (UF 5, 12.)

Radnor continued to provide defense through the October 2024 settlement of the Durham Action, subject to two reservations of rights letters.  (UF 5, 11, 13.)  Both letters, dated May 25, 2022, and September 1, 2023, stated "The Company reserves it rights to assert additional terms and provisions under the policy and at law, which may become applicable," and "The contents of this letter should not be construed as a waiver of any rights or defenses, which this Company may have under this Policy with respect to this matter."  (Shrimp Decl. Ex. 3 ("May 25, 2022 ROR Letter") 97, Ex. 4 ("Sept. 1, 2023 ROR Letter") 103, Dkt. No. 18-2.)

The Policy includes an NVP provision stating that "No Insured shall settle any Claim, incur any Defense Costs, or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the Insurer's written consent, which shall not be unreasonably withheld."  (UF 7.[3])  The provision expressly states that "The Insurer shall not be liable for any settlement, Defense Costs, assumed obligation or admission to which it has not consented."  (UF 7.)  For the purposes of

---

[2] The Court derives the following factual background, none of which is effectively disputed, from the parties' Separate Statement of Uncontroverted Facts ("UF"), Statements of Genuine Disputes ("GD"), Additional Statements of Material Facts ("AMF"), and responses thereto, in addition to the parties' clearly and specifically cited evidence.  *See* C.D. Cal. L.R. 56-1 to 56-4.

[3] Boldface omitted from all Policy quotations.

the relevant coverage, the Policy defines "Defense Costs" as "that part of Loss constituting reasonable and necessary costs, charges, fees (including attorneys' fees and experts' fees) and expenses incurred in investigating, defending, opposing or appealing any Claim and the premium for appeal, attachment or similar bonds." (UF 8.)  Expressly excluded from "Defense Costs" are "any fees, costs or expenses incurred by any Insured without the Insurer's prior written consent."  (UF 8.)

While the Durham Action was pending and W&Z was providing legal defense, on May 14, 2024, The Endowment signed a Services Agreement with Integreon, an electronic discovery vendor.  (UF 18; AMF 45; Shrimp Decl. Ex. 5 ("June 11, 2024 W&Z Letter"), Dkt. No. 18-2.)   On June 7, 2024, The Endowment entered into a Statement of Work ("SOW") with Integreon for "Phase 1" document production services, estimated at $9,976.00.  (UF 14, 21.)   The SOW mentioned potential "Phase 2" services but did not provide any estimate.  (UF 22.)   The Endowment did not request Radnor's consent before retaining Integreon.  (UF 15–16, 19.)   The Endowment did not consult with W&Z before retaining Integreon.  (UF 15; Shrimp Decl. Ex. 7 ("W&Z Email"), Dkt. No. 18-2 ("The client engaged the e-discovery vendor themselves without my input.").)   Radnor first learned that The Endowment retained Integreon on June 11, 2024, when W&Z sent Radnor the SOW and conveyed that the "client has asked that you consider contributing toward this cost." (UF 14, 19; June 11, 2024 W&Z Letter.)

A month later, on July 12, 2024, W&Z sent Radnor a letter and an Integreon invoice issued to The Endowment for $7,946.65 ("First Invoice").  (UF 23.)  W&Z again wrote that "the client has asked that [Radnor] contribute toward this cost since it is necessary and has been incurred in the defense of" the Durham Action.  (UF 24.) Although Radnor never consented to The Endowment retaining Integreon's services, (UF 17, 20, 27–28), Radnor paid the invoice "as a special accommodation" to The Endowment and W&Z.  (UF 25.)

3

The Endowment did not request or obtain consent for Integreon to perform additional work, nor did it notify Radnor that additional work was being performed. (UF 27, 29–31.)  And yet, on August 16, 2024, Integreon invoiced The Endowment an additional $412,618.94 for Phase 2 related work.  (UF 29; Shrimp Decl. Exs. 9–10 ("Subsequent Invoices"), Dkt. No. 18-2.)   Radnor declined to pay the Subsequent Invoices based on the NVP provision.   (AMF 47; Shrimp Decl. Ex. 8 ("Decline Letter") 119–20, Dkt. No. 18-2.)  Specifically, Radnor explained that, "[b]ecause the expenses reflected in the [Subsequent Invoices] were incurred by The California Endowment without the knowledge or consent of [Radnor], these expenses are not covered under the Policy."  (Decline Letter 120 (citing Policy ¶ V.A.2).)

On July 28, 2025, The Endowment filed this action asserting that Radnor's refusal to pay the Subsequent Invoices constitutes a breach of the Policy and a breach of the implied covenant of good faith and fair dealing.  (Compl. ¶¶ 52–64; UF 32–33.)  After initial discovery, the Court granted Radnor's motion to stay further discovery pending a ruling on this Motion.  (Order Stay, Dkt. No. 31.)  Now, Radnor seeks summary judgment, arguing that under the Policy, Radnor is not liable for costs The Endowment incurred voluntarily and without Radnor's consent.  (Mot. 1–3.)

## III.    EVIDENTIARY OBJECTIONS

Radnor objects to certain of The Endowment's evidence and statements purporting to dispute Radnor's facts.  (Radnor Objs., Dkt. No. 29-2.)   The Court **OVERRULES** Radnor's relevance-based objections because they are "duplicative of the summary judgment standard." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).   The Court **SUSTAINS** Radnor's objection number forty-one and disregards The Endowment's lengthy and improper legal argument, which is copy-pasted into the majority of its ostensible disputes.  (*See, e.g.*, Endowment GD ("GD") 15, 29, Dkt. No. 26-1; *see also* Scheduling & Case Mgmt. Order 7 ("No argument should be set forth in this document"), Dkt. No. 17.)  Further, The Endowment's argumentative rejoinders to Radnor's uncontroverted facts are, by

and large, unresponsive and/or irrelevant. Thus, Radnor's facts remain largely undisputed.

## IV.    LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See id.* at 324; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250) (emphasis omitted). Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact sufficient to defeat summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh

conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence. C.D. Cal. L.R. 56-4. The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced. *Id.*

## V.     DISCUSSION

Radnor seeks summary judgment on The Endowment's claims, arguing Integreon's costs are not covered "Defense Costs" under the Policy because The Endowment voluntarily retained Integreon without informing Radnor or obtaining its prior written consent. (Mot. 1–3.) In contrast, The Endowment contends the NVP provision should not apply to post-tender defense costs, and even if it does, Integreon's costs are covered costs under the Policy, meaning Radnor breached the Policy when it refused to pay the Subsequent Invoices. (Opp'n 1–2, Dkt. No. 26.) In the alternative, The Endowment argues that (1) triable issues of waiver and estoppel preclude summary judgment, and (2) The Endowment needs more discovery to fully oppose the Motion. (*Id.* at 2.)

### A.     NVP Provision Enforceability

NVP provisions, such as the one at issue here, "are designed to ensure that responsible insurers that promptly accept a defense tendered by their insureds thereby gain control over the defense." *Low v. Golden Eagle Ins. Co.*, 110 Cal. App. 4th 1532, 1544 (2003). Such provisions are "based on the equitable rule that the insurer is invested with the complete control and direction of the defense and is thus not liable for any voluntary payments, expenses, or other obligations assumed by the insured without the insurer's consent." *Truck Ins. Exch. v. Unigard Ins. Co.*, 79 Cal. App. 4th

966, 981 (2000) (citation modified) (quoting *Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A.*, 3 Cal. 3d 434, 449 (1970)).

Although a breach of an NVP provision typically occurs before the insured has tendered the defense, NVP provisions are enforceable as to costs incurred both pre- and post-tender, in the absence of "economic necessity, insurer breach, or other extraordinary circumstances." *Low*, 110 Cal. App. 4th at 1544, 1546–47 ("[S]uch a provision *is* enforceable posttender until the insurer wrongfully denies tender."). Thus, it is only "when the insured has requested and been denied a defense by the insurer that the insured may ignore the policy's provisions forbidding the incurring of defense costs without the insurer's prior consent, and under the compulsion of that refusal undertake his own defense at the insurer's expense." *Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 346–47 (1999). Otherwise, "[w]hen the insurer provides a defense to its insured, the insured has no right to interfere with the insurer's control of the defense." *Truck Ins.*, 79 Cal. App. 4th at 979.

Here, the undisputed facts establish that Radnor accepted The Endowment's tender and provided W&Z to defend The Endowment in the Durham Action. (UF 5, 11, 12.) Thus, Radnor was contractually entitled to "complete control and direction of the defense." *Truck Ins.*, 79 Cal. App. 4th at 981 (emphasis omitted) (quoting *Gribaldo*, 3 Cal. 3d at 449). The Endowment offers no evidence of economic necessity, insurer breach, or extraordinary circumstances that could excuse the requirement for prior written notice. (*See generally* Opp'n; GD; AMF); *Low*, 110 Cal. App. 4th at 1544.

Simply put, Radnor provided The Endowment with a defense and The Endowment had "no right to interfere" with Radnor's "control and direction" of the defense by unilaterally and voluntarily incurring litigation costs. *Truck Ins.*, 79 Cal. App. 4th at 979, 981. To now saddle Radnor with expenses to which it never consented strikes the Court "as the antithesis of equity." *Id.* The NVP provision is enforceable here.

**B.    Contract Interpretation**

Radnor contends the NVP provision is clear and explicit and prohibits The Endowment from incurring defense costs without Radnor's prior written consent. (Reply 5–7, Dkt. No. 29.)  The Endowment argues the NVP provision is ambiguous and must be interpreted in light of The Endowment's reasonable expectation of coverage.  (Opp'n 15–18.)

"In general, interpretation of an insurance policy is a question of law that is decided under settled rules of contract interpretation."  *California v. Cont'l Ins. Co.*, 55 Cal. 4th 186, 194–95 (2012), *as modified* (Sept. 19, 2012).  "While insurance contracts have special features, they are still contracts" and "[t]he fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties."  *Id.*  "Such intent is to be inferred, if possible, solely from the written provisions of the contract."  *Id.* at 195.  "If contractual language is clear and explicit, it governs."  *Id.*

Courts look to how terms are used in the "ordinary and popular sense," unless the parties use terms "in a technical sense" or usage gives them "a special meaning."  *Id.*  Where a policy provision is uncertain or ambiguous, the court looks to what "a reasonable insured would expect.'"  *Uhrich v. State Farm Fire & Cas. Co.*, 109 Cal. App. 4th 598, 622 (2003), *as modified on denial of reh'g* (July 9, 2003).  "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).  However, a term is not ambiguous merely because it is not defined, the parties disagree about its meaning, or it is susceptible to more than one meaning when isolated from its context.  *California*, 55 Cal. 4th at 195.  "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract."  *Waller*, 11 Cal. 4th at 18.  "Courts will not strain to create an ambiguity where none exists," *id.* at 18–19, and "[w]here no uncertainty exists, the insured cannot reasonably expect" coverage, *Uhrich*, 109 Cal. App 4th at 622.

8

Here, the NVP provision prohibits the "Insured" from "incur[ring] any Defense Costs, or otherwise assum[ing] any contractual obligation . . . with respect to any Claim without the Insurer's written consent." (Policy ¶ V.A.2.) The Endowment points to no specific ambiguities in the above language. (Opp'n 15–18.) Indeed, the meaning of the language is readily understood: the Insured (The Endowment) may not incur any costs (Subsequent Invoices for $412,618.94) or obligations (Integreon Services Agreement and SOW) related to the Claim (the Durham Action) without the Insurer's (Radnor's) written consent. (Policy ¶ V.A.2.) Read plainly, The Endowment breached the NVP provision when it voluntarily retained Integreon for services on the Durham Action and incurred litigation costs without Radnor's prior written consent.

The Endowment argues the NVP provision should be read so that it does not apply to defense costs incurred after Radnor accepted its tender and provided a defense. (Opp'n 12–14.) But California courts have expressly found that "such a provision *is* enforceable posttender until the insurer wrongfully denies tender." *Low*, 110 Cal. App. 4th at 1546–47. The Endowment also contends the NVP provision is ambiguous because requiring prior written consent for every minute defense cost incurred while litigation is ongoing would be impractical. (Opp'n 14, 17.) However, when Radnor accepted the defense and provided The Endowment with W&Z, Radnor also obtained the right to "complete control and direction" of all aspects of the defense via W&Z. *Truck*, 79 Cal. App. 4th at 981 (emphasis omitted) (quoting *Gribaldo*, 3 Cal. 3d at 449). This necessarily includes selection of e-discovery vendors. Whether W&Z believed, after the fact, that Integreon's work was reasonable or necessary is irrelevant to The Endowment's interference with Radnor's control of the defense. (*See* Opp'n 2, 14, 18 (arguing the NVP provision should not apply so long as the insured can convince defense counsel the costs voluntarily incurred were reasonable and necessary).)

Finally, The Endowment asserts that W&Z, not The Endowment, should have obtained Radnor's prior written consent for Integreon's services. (Opp'n 14.) Not so.

First, the NVP provision requires the "Insured" to obtain prior written consent, not defense counsel. (Policy ¶ V.A.2.) Second, the undisputed facts establish that The Endowment retained Integreon without W&Z's input or knowledge, so W&Z could not possibly have requested and obtained Radnor's consent prior to The Endowment's retention of Integreon. (UF 15.) Third, the Policy plainly provides that prior written consent is a condition precedent to The Endowment's right to be indemnified for defense costs; "a fortiori the right to be indemnified cannot relate back to . . . obligations incurred before notice." *Jamestown*, 77 Cal. App. 4th at 350.

The NVP provision is clear and explicit: Radnor is not liable for costs The Endowment incurred without Radnor's consent.

**C.      Waiver & Estoppel**

The Endowment's argument that Radnor impliedly waived its right and should be estopped from enforcing the NVP provision fares no better. (Opp'n 18–20.) The Endowment fails to raise any triable issue of fact that could support the application of waiver or estoppel.

Although waiver is generally a question of fact under California law, where the material facts are undisputed or the evidence is susceptible of only one reasonable conclusion, waiver may be a question of law. *Oakland Raiders v. Oakland-Alameda Cnty. Coliseum, Inc.*, 144 Cal. App. 4th 1175, 1191 (2006). "Waiver is the intentional relinquishment of a known right after full knowledge of the facts and depends upon the intention of one party only." *Id.* at 1189. Additionally, there is generally "some element of misconduct by the insurer or detrimental reliance by the insured." *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1559, 1560 (9th Cir. 1991) ("Federal cases applying California law also suggest such misconduct or reliance must be shown."). "[E]stoppel is applicable where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts." *Oakland Raiders*, 144 Cal. App. 4th at 1190 (alteration in original). An insured invoking estoppel must prove that it acted in detrimental

10

reliance on action by the insurer. *Low*, 110 Cal. App. 4th at 1548 (clarifying estoppel must arise following the insurer's action or inaction). "One of the essential elements of estoppel or waiver in an insurance case is knowledge of the pertinent facts." *Merchants Fire Assur. Corp. v. Lattimore*, 263 F.2d 232, 243–44 (9th Cir. 1959).

### 1. Waiver

The Endowment cannot establish waiver. The Endowment initially asserts that Radnor's reservation of rights letters did not explicitly cite the NVP provision and therefore Radnor waived the right to deny coverage for the Subsequent Invoices based on that provision. (Opp'n 19.) However, "a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial." *Waller*, 11 Cal. 4th at 31. The Endowment next suggests that Radnor unreasonably withheld consent to Integreon's services. (Opp'n 18, 19.) Yet, Radnor could not have withheld consent because The Endowment never sought Radnor's consent; indeed, The Endowment retained Integreon without informing Radnor or consulting W&Z. (UF 15, 27, 29–30; W&Z Email.)

The Endowment lastly hints that Radnor's inconsistent conduct, presumably in paying the First Invoice, should operate as a waiver of its right to enforce the NVP provision to deny coverage for the Subsequent Invoices. (Opp'n 19–20.) The undisputed facts establish that the Integreon SOW and First Invoice included estimates and costs for Phase 1 work, only, and did not include estimates for any potential additional Phase 2 work. (UF 21–22, 26; June 11, 2024 W&Z Letter & SOW; Shrimp Decl. Ex. 6 ("July 12, 2024 W&Z Letter & First Invoice"), Dkt. No. 18-2.) Further undisputed is that Radnor paid the First Invoice expressly as "a special accommodation" to The Endowment and W&Z, and at no time consented to additional Integreon work. (UF 25, 27–28; Decline Letter.) In light of these undisputed facts, Radnor lacked knowledge that Integreon was performing Phase 2 work or of the estimated cost for such work. Thus, Radnor could not have

"intentional[ly] relinquish[ed]" its right to enforce the NVP provision and deny payment for the Subsequent Invoices "after full knowledge of the facts," because Radnor lacked full knowledge of the facts. *Oakland Raiders*, 144 Cal. App. 4th at 1189.

### 2.    Estoppel

The Endowment also cannot establish estoppel. Any detrimental reliance must have occurred after Radnor acted or failed to act so as to induce The Endowment to retain Integreon. *See Low*, 110 Cal. App. 4th at 1548 (noting that "action or inaction by [the insurer] had to cause" the insured's detrimental reliance). However, The Endowment offers no evidence of any action or inaction by Radnor that induced The Endowment to retain Integreon. Here, Radnor accepted the tendered defense and provided defense counsel pursuant to the Policy. Neither action could reasonably have induced The Endowment to independently retain a litigation vendor and incur unauthorized defense costs.

The undisputed facts establish that Radnor did not have full knowledge of the facts because The Endowment voluntarily retained Integreon on its own and without notice or consent from either Radnor or W&Z. Further, those same facts demonstrate that Radnor did nothing to induce The Endowment to retain Integreon, so The Endowment suffered no detrimental reliance. As such, The Endowment fails to raise a triable issue with respect to waiver or estoppel.

### D.    Rule 56(d)

As a final Hail Mary, The Endowment urges the Court to deny the Motion under Rule 56(d) because it needs additional discovery to "find better and proper proof." (Opp'n 20–23; Decl. Steven Brower ("Brower Decl.") ¶¶ 14–18, Dkt. No. 26-2.)

Under Rule 56(d), "[t]he district court has discretion to continue a motion for summary judgment if the opposing party needs to discover essential facts." *Cal. Union Ins. Co. v. Am. Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990)

(citing Fed. R. Civ. P. 56(d)[4]).  A party requesting a continuance pursuant to Rule 56(d) must identify by affidavit "the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *SEC v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018).  "The facts sought must be 'essential' to the party's opposition to summary judgment and it must be 'likely' that those facts will be discovered during further discovery." *Id.* (citations omitted).  Continuance is properly denied where "the movant has failed diligently to pursue discovery in the past, or if the movant fails to show how the information sought would preclude summary judgment." *Cal. Union*, 914 F.2d at 1278 (citations omitted).

The Endowment does not satisfy Rule 56(d).  For one thing, it fails to identify specific facts "likely to be discovered."  The Endowment argues the discovery it seeks "may show" and "could show," (Brower Decl. ¶¶ 15–18), information which "may well be relevant," (Opp'n 23; AMF 80–83).  These assertions are nothing more than "'mere speculation,' which is insufficient to satisfy the rule." *Stein*, 906 F.3d at 833.

Further, The Endowment does not identify how the facts it lists would preclude summary judgment.  As discussed above, Radnor establishes that The Endowment incurred the Integreon costs without first obtaining Radnor's prior written consent, thereby relieving Radnor of the obligation to indemnify them pursuant to the Policy. The Endowment does not argue that it obtained Radnor's consent.  (*See generally* Opp'n; Brower Decl.; GD; AMF.)  The Endowment also does not seek discovery aimed at undercutting this dispositive undisputed fact.  (*See generally* Opp'n; Brower Decl.; AMF.)  Nor could it, as it vigorously asserts that it did not *need* Radnor's prior written consent.  (*See, e.g.*, GD 15, 27.)  Thus, the additional discovery The Endowment seeks would not "shed light on" the issue "upon which the summary judgment decision" is based. *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994).

---

[4] The Ninth Circuit in *California Union* cited Rule 56(f), which became Rule 56(d) under the 2010 Amendments. *Ohno v. Yasuma*, 723 F.3d 984, 990 n.7 (9th Cir. 2013).

Finally, The Endowment is in possession of the entire claims file, which Radnor produced as part of its initial disclosures.  (Reply 10; Decl. Ilya A. Kosten ISO Mot. Stay ¶ 10, Dkt. No. 19-1.)  As such, The Endowment already has all the evidence it would need to dispute its failure to request or obtain consent from Radnor, as any such communications would be in the claims file.  *See Cal. Union*, 914 F.2d at 1278 (affirming denial of Rule 56(d) continuance where "all written communications" had already been produced and "there was no likelihood of material new information being disclosed" in additional discovery).

Thus, The Endowment fails to raise any basis to deny the Motion under Rule 56(d).

## VI.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Radnor's Motion for Summary Judgment.  (Dkt. No. 18.)

**IT IS SO ORDERED.**

May 6, 2026

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**